UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Jose Luis Reynaldo Reyes-Castillo, et al.,<br><br>    Defendants. | 2:19-CR-00103-GMN-MDC<br><br>**REPORT AND RECOMMENDATION TO DENY THE DEFENDANTS' MOTIONS TO DISMISS THE SECOND SUPERSEDING INDICTMENT (*ECF NOS. 159, 160, AND 164*)** |

Defendant Jose Luis Reynaldo Reyes-Castillo ("Reyes-Castillo") filed a *Motion To Dismiss the Indictments*[1] and defendants David Arturo Perez-Manchame ("Perez-Manchame") and Alexander de Jesus Figueroa-Torres ("Figueroa-Torres") (these three defendants will be referred to collectively as "defendants") filed *Joinders* (referred to collectively as "Motions"). *ECF Nos. 159, 160, and 164*. The Court RECOMMENDS DENYING the Motions.

**I. BACKGROUND**

The defendants face serious charges for Murder in Aid of Racketeering, RICO conspiracy, and related counts. *See ECF Nos. 1, 69, 141, and 223*. The defendants move to dismiss the indictments in this case. *ECF No. 159 at 5*. They argue that the grand juries that indicted them were not drawn from a fair cross section of the community. *Id.* The defendants argue that the systemic underrepresentation of African Americans, Latinos, and men in the qualified jury wheel[2] violates their Fifth Amendment and

---

[1] The parties agree that the arguments in the Motions apply equally to both the Second Superseding Indictment (*ECF No. 141*) and the newly filed Third Superseding Indictment (*ECF No. 223*). *See ECF No. 230 at 2: 5-16*.

[2] The relevant pool is this district's qualified jury wheel, from which venires for grand and petit juries are randomly selected. Members of the qualified jury wheel are randomly selected from the qualified jury wheel. Jury Selection Plan §§ 3.01-3.05.

1

Sixth Amendment rights, and Jury Selection Act. *Id.*

The government argues that the defendants have not met their burden of establishing (1) that a cognizable group is not fairly and reasonably represented within the pool from which jurors are summoned and (2) that the underrepresentation of that group is attributable to a systematic exclusion of that group from the pool from which jurors are selected. *ECF No. 204 at 2*. The defendants argue in the reply that the underrepresentation of distinctive groups is due to systemic flaws in the district's jury selection process. *ECF No. 230 at 7*.

## II. DISCUSSION

### A. Legal Standard

Under the equal protection component of the Due Process Clause of the Fifth Amendment, a jury selection process cannot discriminate against a protected class. *Castaneda v. Partido*, 430 U.S. 482, 493 (1977). To show a prima facia case, defendants must "(1) establish that the group, of which [he] is a member, is 'one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or applied;' (2) prove the degree of underrepresentation 'by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time;' and (3) discriminatory intent." *United States v. Esquivel*, 88 F.3d 722, 725 (9th Cir. 1996) (quoting *Castaneda*, 430 U.S. at 494).

When analyzing the degree of underrepresentation, the Ninth Circuit Court of Appeals described a range of statistical models used by courts, found it "appropriate to abandon the absolute disparity approach" as the exclusive method used by the Ninth Circuit, and "decline[d] to confine district courts to a particular analytical method," but rather recognized that "the appropriate test or tests to employ will largely depend on the particular circumstances of each case." *United States. v. HernandezEstrada*, 749 F.3d 1154, 1164 (9th Cir. 2014) (Noting that for jury composition analysis, the court may consider different statistical tools such as the absolute disparity test, the comparative disparity test, and standard

deviation analysis). Proof of discriminatory intent is "the most crucial factor in an equal protection case." *Id.* at 1167.

The Sixth Amendment affords every criminal defendant the right to an impartial "jury drawn from a fair cross section of the community" in which the defendant is tried. *Duren v. Missouri,* 439 U.S. 357, 368 (1979). The Jury Selection Act extends this constitutional requirement to the pool from which federal grand jurors are selected. Under the Jury Selection Act, litigants likewise "have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. Under the Act, a "defendant may move to dismiss the indictment or stay the proceedings against him on the ground of a substantial failure to comply with the provisions of [the Act] in selecting the grand or petit jury." 28 U.S.C. § 1867(a). "Because the same analysis determines whether the jury selection procedures meet the fair cross-section requirement under either the Jury Selection Act or the Sixth Amendment," courts "consider those two claims together." *United States v. Hernandez-Estrada*, 749 F.3d 1154, 1158 (9th Cir. 2014) (*en banc*).

To establish a prima facie fair cross-section violation, the defendants must show "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systemic exclusion of the group in the jury-selection process." *Duren*, 439 U.S. at 364. Once a prima facia case is established, the government has the burden to demonstrate a 'significant state interest be manifestly and primarily advanced by those aspects of the jury selection process . . . that result in the disproportionate exclusion of [] distinctive group[s]." *Id.* at 367-68. Unlike a Fifth Amendment challenge, a fair cross-section challenge does not require the defendants to demonstrate discriminatory intent.

B. **Fifth Amendment Equal Protection Clause**

Regarding the first prong, defendants Reyes-Castillo and Perez-Manchame affirmatively state

that they are both male and Latino. While Figueroa-Torres does not affirmably state that he is also male and Latino in his joinder, the Court will assume that he is for the purposes of analyzing the first prong.[3] There is no dispute that as Latino males, the defendants are members of a distinct group under an equal protection analysis. See *Hernandez-Estrada*, 749 F.3d at 1159 (holding that African Americans and Latinos are distinctive groups under the fair-cross section test). A person's gender is also recognized as a distinctive group. *See Duren*, 439 U.S. at 364.

Regarding the second prong, the defendants argue that Latinos and men are significantly underrepresented in the grand jury pool under the comparative disparity analysis, supported by a standard deviation analysis. *ECF No. 159 at 12-13*. The defendants support their argument with expert testimony from Jeffrey Martin. *Id. at 17*. Martin concludes that the underrepresentation of African Americans, Latinos, and males on the qualified jury wheel is not the result of random factors but is the result of a systematic process that underrepresents these groups. Specifically, under Martin's comparative disparity analysis, on the qualified jury wheel: (1) African Americans are underrepresented by 21.18% (1.63% divided by 12.43%)[4] which is more than seven standard deviations; (2) Latinos are underrepresented by 19.61% (4.47% divided by 22.78%), which is more than ten standard deviations; and (3) men are underrepresented 6.06% underrepresentation (3.03% divided by 50.02%), which is more than six standard deviations.

The government argues that defendants fail to establish unfair underrepresentation of any group

---

[3] It is unclear from the briefing whether any of the defendants also identify as African American and why such group was included in the defendants' motions. In any event, defendants' inclusion of statistics regarding African Americans does not change the analysis or conclusion here.

[4] The undersigned is no statistician but believes that Martin may have made a mathematical error here. The Ninth Circuit has noted that "comparative analysis is disfavored" because it "exaggerates the effect of any deviation." *United States v. Sanchez-Lopez*, 879 F.2d 541, 548 (9th Cir. 1989). The First Circuit noted further concerns with the use of comparative analysis because "small variation in the figures used to calculate comparative disparity can produce a significant difference in the result." *United States v. Hafen*, 726 F.2d 21, 24 (1st Cir. 1984). Thus, errors in the methodology often amplify such distortions or the reliability of such data, as is the case here with defendants' proffered statistics.

1  under either the absolute disparity test[5] or the comparative disparity test. *ECF No. 204 at 6*. The
2  government also argues that the expert's standard deviation analysis is unhelpful. *Id.* The government
3  points out that even if the defendants' analysis is accurate and applicable, it generates results in the
4  range that other federal courts have deemed fair and reasonable. *Id. at 3*. The Court finds that the second
5  prong weighs in the government's favor because the defendants do not establish any discrepancy that
6  persisted "over a significant period of time" as the Fifth Amendment requires.

7  Regarding the third prong, defendants argue that the deviation of the jury pool from the general
8  population is so severe, per their proffered standard deviation analysis, that the alleged
9  underrepresentation is not a product of chance. *ECF No. 159 at 13*. The defendants support this
10 argument with Martin's expert opinion that the exclusion of Latinos and men are "not the result of
11 random factors, chance, or luck, but is the result of a systematic process that under-represents" both
12 groups. *ECF No. 159 at 20: 31-32*.

13 The Court concludes however that the defendants have failed to demonstrate a violation of his
14 rights under the Fifth Amendment's equal protection clause because they have not demonstrated
15 discriminatory intent. Discriminatory intent is the most crucial prong. *HernandezEstrada* at 1167. The
16 defendants only evidence of discriminatory intent is Martin's conclusion, based on his standard
17 deviation analysis, that the underrepresentation he found is very unlikely explicable by chance. *Id.*

18 The Court has reviewed the limited caselaw on this point. The largest proffered comparative
19 disparities are for the smallest populations that Martin asserts are underrepresented: African Americans
20 (comprising 12.43% of the population using Martin's benchmark) and Latinos (comprising 22.78% of
21 the population using Martin's benchmark). Even these values, at roughly 20% each, are within the range

---

[5] None of the groups Martin identified meet the Ninth Circuit's threshold where the absolute disparity of that group's underrepresentation is 7.7% or lower. See *Hernandez-Estrada*, 749 F.3d at 1161 (quoting *United States v. Rodriguez–Lara*, 421 F.3d 932, 943–44 (9th Cir. 2005)). Since the greatest absolute disparity that Martin identifies is significantly less than what the Ninth Circuit has held to be acceptable, these numbers are not repugnant under the absolute disparity measure.

of comparative disparities that federal courts across the country have deemed acceptable for groups that comprise comparable—or larger—portions of the relevant community. See, *e.g, Howell v. Superintendent Rockview* SCI, 939 F.3d 260, 268–69 (3d Cir. 2019) (noting absolute disparity of 5.83% for African Americans in jury venire, while census data indicated that 10.7% of adult population in county was African American, resulting in comparative disparity of 54.49%); *United States v. Chanthadara*, 230 F.3d 1237, 1256–57 (10th Cir. 2000) (noting absolute disparity of 1.60% for Hispanics within master jury wheel, while 2.74% of adult population was Hispanic and holding that a comparative disparity of 58.39% did not establish a prima facie violation); *United States v. Shinault*, 147 F.3d 1266, 1273 (10th Cir. 1998) (noting absolute disparity of 0.76% for Asians among venire members, while 1.27% of adult population was Asian, resulting in comparative disparity of 59.84%, but noting that "considering the small size of each of the groups in relation to the larger community, it is not surprising that the comparative disparity numbers are large").

Because it "exaggerates the effect of any deviation," the Ninth Circuit has noted that "comparative analysis is disfavored." *United States v. Sanchez-Lopez*, 879 F.2d 541, 548 (9th Cir. 1989) (holding absolute disparity of 2.05% for Hispanics within master jury wheel insufficient to establish unfair underrepresentation, while 3.87% of total population was Hispanic, and noting 52.9% comparative disparity). In the District of Alaska[6], evaluating another report by Martin, the court found that the asserted comparative disparities of 52.15% for African Americans within the jury pool and of 29.14% for American Indians or Native Alaskans within the jury pool were insufficient to make out a prima facie case of unfair underrepresentation. *United States v. Smith*, 457 F. Supp. 3d 734, 742–43 (D. Alaska 2020)  (noting that relevant groups were represented in the community at rates of 3.37% and 13.21% respectively, and that "where the distinctive groups in question make up a small portion of the

---

[6] This Court has also previously considered the analysis of the Alaska court in a similar case. See *United States v. Knight*, No. 3:19-cr-00038-MMD-CLB, 2021 U.S. Dist. LEXIS 46404, at *1 (D. Nev. Mar. 11, 2021).

district's population, comparative disparities in the high-50% range are acceptable").

The Court finds that the underrepresentation proffered here is not enough to demonstrate underrepresentation. By extension, the underrepresentation proffered here cannot be "sufficiently large" enough to then presume intent pursuant to the third prong. This renders Martin's opinion unpersuasive. Without any affirmative evidence of discriminatory intent on this district's part when it adopted the operative jury selection plan, the Court finds defendants' argument that the deviation here is so severe that it is unlikely the deviation "is due solely by chance or accident" and the court must thus presume "racial or other class-related factors entered into the selection process" even more unpersuasive. *ECF No. 159 at 13*, citing *Casteneda*, 430 U.S. at 494 n.13. The defendants have not met their burden of establishing an unfair underrepresentation of any group under any of the tests. The defendants have not shown substantial underrepresentation of his group, so he has not made out a prima facie case of discriminatory purpose. *Id.* Since the defendants have not met their burden here, the burden does not shift to the government to rebut the case. The Court recommends denying defendants' Motions to the extent predicated on his Fifth Amendment challenge.

### C. The Sixth Amendment Fair Cross Section the Jury Selection Act

There is no dispute that the allegedly excluded groups of African Americans, Latinos, and men are distinctive in the community. As to the second prong, the defendants also use a comparative disparity analysis supported by a standard deviation analysis to argue underrepresentation. *ECF No. 159 at 5*. Regarding the defendants' Sixth Amendment challenge, the Court again finds that even assuming they have demonstrated underrepresentation at step two, defendants' showing on the third prong—that the underrepresentation is the result of systematic exclusion of distinctive groups—is insufficient. In arguing the third prong, defendants proffer specific examples to explain how the jury selection plan leads to systematic exclusion.

For example, voter registration lists in Nevada do not contain racial or Hispanic ethnicity. The

defendants argue that racial and Latino ethnicity of the registered voters can be determined by utilizing statistical estimation tools based on housing patterns or surnames. *ECF No. 159 at 22: 55-56*. There is no proof of systematic exclusion here as this example is speculative. The small disparities the defendants identify can be explained by (1) ordinary variation in the sample used to test the jury pool, and by (2) nonresponses to surveys from the Clerk's Office by the groups the defendants assert are underrepresented. The defendants fail to carry their burden here.

The defendants also assert that because the voter registration lists provided by some counties do not include "inactive" voters. *ECF No. 159 at 22: 48-49.* These inactive voters are technically registered, but no longer have active mailing addresses within their county of registration. *Id.* Defendants argue that this drives disparities in the demographics they assert and skews the rate at which prospective jurors are drawn from each county. *Id.* The defendants' conclusion is unsupported by any evidence tending to show systematic exclusion. The defendants fail to explain the effect that the exclusion of inactive voters from certain county lists would have on any group they assert is underrepresented. Defendants provide no demographic information regarding inactive voters and does no analysis of the expected effect of the resulting skew in the rate at which voters are drawn from counties. The defendants have failed to establish that the underrepresentation they assert here is "due to" exclusion of inactive voters from certain county voter lists, as required to carry their burden. *Duren,* 439 U.S. 364-67. Even if inactive voters were included in the source lists, they would still be excluded from the pool of potential jurors creating no impact as to the demographic makeup of the grand jury. Without any evidence to rely on, the Court simply cannot conclude that drawing only from active voters leads to the systematic exclusion of certain groups. The Court finds that exclusion of inactive voters from certain voter registration lists does not meaningfully affect jury pool demographics.

Because the Jury Selection Act fair cross-section challenge requires the same analysis as a Sixth Amendment fair cross-section challenge, the Court refers to its analysis above, rejecting defendants

Sixth Amendment fair cross-section challenge. The Court finds that the defendants have similarly failed to demonstrate a substantial Jury Selection Act violation. Defendants have failed to demonstrate how exclusion of inactive voters systematically excludes underrepresented groups to amount to a substantial Jury Selection Act violation. The defendants have failed their burden of establishing an unfair underrepresentation of any group. The Court recommends denying defendants' Motions to the extent predicated on his Sixth Amendment and Jury Selection Act challenges.

Accordingly,

The Court RECOMMENDS that the *Motion to Dismiss the Indictments (ECF No. 159)* and the *Joinders (ECF Nos. 160 and 164)* be DENIED.

Dated: March 7, 2025.

_____
Hon. Maximiliano D. Couvillier III
United States Magistrate Judge