# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   vs.<br><br>JOSE LUIS REYNALDO REYES-<br>CASTILLO, *et al*.,<br><br>        Defendants. | Case No.: 2:19-cr-103-GMN-MDC<br><br>**ORDER REGARDING<br>MOTIONS IN LIMINE<br>(ECF Nos. 264, 266, 267, 268)** |

Pending before the Court are several Motions in Limine filed by Defendant Alexander De Jesus Figueroa-Torres, (ECF Nos. 264, 266, 267, 268). The Government filed Responses, (ECF Nos. 294, 296, 298, 300). For the reasons discussed below, the Court denies, in part, and grants, in part, Figueroa-Torres' Motion in Limine re: Immigration, (ECF No. 264). Further, the Court denies Figueroa-Torres' Motion in Limine to Preclude Reference to Drug Use, Possession of Drugs, (ECF No. 266). The Court denies as moot Figueroa-Torres' Motion for Preliminary Jury Instruction Regarding Gang Membership, (ECF No. 267) and the related Motions for Joinder, (ECF Nos. 273, 277). Lastly, the Court grants, in part, and denies, in part, Figueroa-Torres' Motion in Limine to Preclude or Limit Testimony from the Government's Gang Expert, (ECF No. 268), and the related Motions for Joinder, (ECF Nos. 272, 278).

## I.    BACKGROUND

Defendants Reyes-Castillo, Perez-Manchame, and Figueroa-Torres face charges for Murder in Aid of Racketeering, RICO conspiracy, and other related counts. (*See* Third Superseding Indictment, ECF No. 223). The case is now set for trial and the parties filed their respective Motions in Limine.[1]

---

[1] The pending Motions in Limine were filed prior to Defendant Vargas-Escobar's arrest.

## II.  **LEGAL STANDARD**

In general, "[t]he court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104(a).  In order to satisfy the burden of proof for Federal Rule of Evidence ("FRE") 104(a), a party must show that the requirements for admissibility are met by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) ("We have traditionally required that these matters [regarding admissibility determinations that hinge on preliminary factual questions] be established by a preponderance of proof.").

"Although the [FRE] do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing FRE 103(c)).  In limine rulings "are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *see also Luce*, 469 U.S. at 41.

Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002).  However, a motion in limine should not be used to resolve factual disputes or weigh evidence. *C&E Servs., Inc., v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008).  To exclude evidence on a motion in limine, the evidence must be inadmissible "on all potential grounds." *See, e.g.*, *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).  "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).

## III.  **DISCUSSION**

### A.  **Figueroa-Torres' Motion in Limine re: Immigration, (ECF No. 264)**

Defendant Figueroa-Torres moves this Court for an order precluding reference to certain immigration-related activities or actions he took. (*See generally* Mot. Limine Immigration, ECF

No. 264).  Figueroa-Torres anticipates that there may be testimony of his immigration status, his presence in the United States, or the fact that he was deported. (*Id.* 1:25–26).  Indeed, he explains that he may need to elicit testimony or evidence at trial that establishes his defense, *i.e.*, that he could not have participated in any of the acts or offenses described in the Third Superseding Indictment that occurred after October 30, 2017, because he was arrested for a traffic violation on that date and removed from the United States in November 2017. (*Id.* 2:1– 3).  He was then arrested years later, on February 2, 2024, upon entering the United States in the Southern District of Texas. (*Id.* 2:3–4).

Figueroa-Torres argues that the Court should preclude the introduction of this evidence by the Government unless and until the Defendant decides to do so. (*Id.* 2:10–11).  Further, Figueroa-Torres contends that the Court should preclude the introduction of any other removals or unlawful entries. (*Id.* 2:11–13).  Lastly, Figueroa-Torres avers that the Court should preclude the use of the terms "illegal entry," or "illegal alien," because those terms carry with them a connotation of criminality that would be improper and prejudicial. (*Id.* 2:13–15).

The Government indicates that it does not intend to introduce evidence of Figueroa-Torres' re-entry following his deportation in 2017. (Resp. 2:10–11).  Rather, the Government intends to introduce evidence that in or about November 2017, prior to many of the murders charged in the indictment, Figueroa-Torres was deported and could not be present for many of the allegations in the Third Superseding Indictment. (*Id.* 2:11–14).  The Government admits that it is undisputed that Figueroa-Torres was not present for many of the crimes charged. (*See generally id.*).  Therefore, the Government wishes to present that Figueroa-Torres was deported in 2017, and to do it in a way that does not mislead the jury or give the impression that it was attempting to do so. (*See generally id.*).

The Court begins by addressing the admissibility of Figueroa-Torres's deportation status before addressing his argument about the preclusion of specific terms.

### 1. Admissibility of Deportation Status

This Motion in Limine breaks down into two primary considerations: (1) whether statements about Figueroa-Torres' immigration status as a deported non-citizen should be suppressed until he "opens the door," and (2) whether the evidence of his status as a deported non-citizen is admissible. Figueroa-Torres fails to cite a single case, standard, or other legal justification for his argument, but notwithstanding this deficiency, the Court applies the relevant rules to conduct its analysis.

The first issue—whether statements about Figueroa-Torres' immigration status as a deported non-citizen should be suppressed until he "opens the door"—triggers a character evidence analysis if the Government intends to introduce this evidence for propensity purposes. Under FRE 404, evidence of a person's general character is inadmissible if it is simply being used to demonstrate that the person acted in accordance with that general character at some later point in time. *See* FRE 404(a)(1). Likewise, specific evidence of a crime, wrongdoing, or other past act is inadmissible if it is introduced in an attempt to demonstrate that the person acted in accordance with that past act at some later point in time ("they did it then, so they must have done it now"). *See* FRE 404(b)(1). However, under Rule 404(a)(2), there exists limited circumstances in which character evidence can be used for the (typically barred) character or propensity rationale. One such circumstance is in criminal cases; a defendant may "open the door" to the admission of character and propensity evidence to demonstrate a pertinent character trait of the defendant. *See* FRE 404(a)(2)(A). Only once a defendant has "opened the door" can the prosecution introduce evidence to rebut the defendant's character or propensity evidence. *See id*.

Here, Figueroa-Torres was deported in November 2017 and then later arrested in February 2024 upon re-entering the United States. The Government does not seek to introduce evidence of Figueroa-Torres' re-entry after deportation, it only seeks to introduce the fact that

"in or about November 2017, prior to many of the murders charged in the indictment, Figueroa-Torres was deported and could not be present for the remaining events." (Resp. 2:12–13). Thus, the Government does not seek to introduce this fact as character or propensity evidence of a past bad act because it is not introducing the 2017 deportation in an attempt to demonstrate that Figueroa-Torres acted in accordance with that past act at some later point in time.

Second, because this evidence does not appear to be introduced as character evidence, the Court must determine the admissibility of this evidence more generally. To admit evidence of Figueroa-Torres' status as deported non-citizen, the Government must first show that the evidence is relevant under FRE 401. Under FRE 401, evidence is relevant if it is both probative and material. *See* FRE 401. Evidence is probative if it tends to prove or disprove a fact by making it "more or less probable than it would be without the evidence." *See id.* That is, evidence is probative when it has a tendency to make some contested fact more (or less) likely. Evidence is material if it bears on a fact "of consequence in determining the action." *See id.*

Here, it is undisputed that Figueroa-Torres was not in the United States for many of the crimes charged and the Government seeks to introduce evidence of his November 2017 deportation to establish this undisputed fact. (Resp. 2:11–14). The introduction of this evidence is therefore probative and material because the introduction of this evidence tends to prove a fact that has a consequence in determining the action. Thus, the introduction of evidence pertaining to Figueroa-Torres' deportation in 2017 is relevant.

However, relevant evidence is not always admissible. Under FRE 403, courts should exclude evidence if its relevance/probative value is substantially outweighed by the risk of unfair prejudice, which is the risk that the jury will base its verdict on some inappropriate factor extraneous to the evidence admitted at trial. *See* FRE 403. Here, the probative value of this evidence is that Figueroa-Torres was not present in the United States for many of the crimes

charged and the unfair prejudice is that Figueroa-Torres was deported as a non-citizen and the stigma that arise from that assertion.  The probative value of this evidence is not substantially outweighed by the risk of unfair prejudice in this instance.  Thus, this evidence is admissible. The parties may wish to consider stipulating to the agreed upon facts using terms equally acceptable to both parties.  The Court is willing to read the stipulation of fact to the jury if so requested.

### 2.   Use of Terms "Illegal Alien" and "Illegal Entry"

Figueroa-Torres also seeks to preclude the use of the terms "illegal entry" or "illegal alien." (Mot. Limine Immigration 2:12–13).  The Government does not provide a response to this argument. (*See generally* Resp.).  The Court finds that the use of these terms—particularly the word "illegal"—is not relevant because they bear no probative or material value.  Whether Figueroa-Torres "illegally entered" or whether he is an "illegal alien" does not bear on a fact "of consequence in determining the action." *See* FRE 401.  Thus, the Government is precluded from using the terms "illegal entry" or "illegal alien."  The Government may, however, refer to Figueroa-Torres in another way to describe his citizenship or deportation status as it relates to introducing the fact that Figueroa-Torres was deported in November 2017.[2]

After considering the applicable rules, the Court DENIES, in part, and GRANTS, in part, Figueroa-Torres' Motion in Limine re: Immigration.

### B.  Figueroa-Torres' Motion in Limine to Preclude Reference to Drug Use, Possession of Drugs, (ECF No. 266)

Defendant Figueroa-Torres moves this Court for an order precluding the Government from eliciting or presenting any testimony during trial related to drug use or possession by Figueroa-Torres pursuant to FRE 404(b). (*See generally* Mot. Limine Drug Use, ECF No. 266).

---

[2] The parties should meet and confer to determine how to properly refer to Figueroa-Torres' status as a deported non-citizen without the use of the word "illegal" as an unnecessary adjective.

FRE 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FRE 404(b).  Figueroa-Torres argues that it would be prejudicial to reference a defendant using or possessing drugs if drug use or possession are not an element of the offense charged. (Mot. Limine Drug Use 2:3–5).  He further contends that the Government should be instructed to direct its witnesses to refrain from saying things like, "we hung out at a park and smoked a joint," or "I called him because I wanted to get some marijuana from him," or any testimony that relates to simple possession of drugs and/or drug use. (*Id.* 2:5–9).

In response, the Government points out that drug possession is an element of a crime charged. (Resp. 2:7).  The Government argues that any testimony regarding Figueroa-Torres' possession of drugs would not be elicited for the purpose of proving propensity, which is prohibited under FRE 404(b). (*Id.* 2:12–13).  Rather, it would be elicited to prove an actual charged act. (*Id.* 2:14).  Indeed, the first overt act listed in Count One of the Third Superseding Indictment alleges that Figueroa-Torres and his Co-Defendants distributed, and possessed with intent to distribute, marijuana and methamphetamine. (*See* Third Superseding Indictment at 11, ECF No. 223).

### 1.  ". . . I wanted to get some marijuana from him."

The Court first discusses the admissibility of testimony such as, "I called him because I wanted to get some marijuana from him."  This testimony goes directly to a charged overt act and is therefore relevant under FRE 401 because it is both probative and material.  But, as mentioned above, the introduction of relevant evidence is not without its limitations.  FRE 403 allows courts to exclude evidence if the probative value of the evidence is substantially outweighed by the risk of unfair prejudice. *See* FRE 403.  That is not the case in the pending matter.  Here, Figueroa-Torres argues that if the jury were to hear that he possessed marijuana,

it would make him "look bad" and therefore prejudice them against him. (*See generally* Mot. Limine Drug Use). On the other hand, the probative value of this testimony is high because it goes right to the heart of an overt act alleged in the Third Superseding Indictment. Thus, the probative value of this evidence is not substantially outweighed by the risk of unfair prejudice and is therefore admissible.

### 2. "We. . . smoked a joint."

The Court next discusses the admissibility of a statement like, "we hung out at a park and smoked a joint." Figueroa-Torres argues that if the jury were to hear that he smoked a marijuana cigarette, it would make him "look bad" and therefore prejudice them against him. (*See generally* Mot. Limine Drug Use). This testimony likewise goes directly to a charged overt act and is therefore relevant under FRE 401 because it is both probative and material. The Government argues, and the Court agrees, that eliciting testimony that Figueroa-Torres engaged in what is currently a legal act in Nevada, smoking marijuana, would not prejudice a jury in a way that substantially outweighs the probative value of such testimony under FRE 403. However, if it is illegal to smoke in the park because the park is on federal land, for instance, then the probative value of this testimony would be substantially outweighed by the risk of unfair prejudice and therefore could affect admissibility. No such facts have been presented to the Court. Accordingly, the probative value of this evidence is not substantially outweighed by the risk of unfair prejudice and is therefore admissible.

In conclusion, the Court DENIES Figueroa-Torres' Motion in Limine to Preclude Reference to Drug Use, Possession of Drugs.

### C. Figueroa-Torres' Motion for Preliminary Jury Instruction Regarding Gang Membership, (ECF No. 267)

Defendant Figueroa-Torres moves this Court to give a preliminary jury instruction regarding gang membership. (*See generally* Mot. Jury Instr., ECF No. 267). Defendants Reyes-

Castillo and Perez-Manchame filed Motions for Joinder, (ECF Nos. 273, 277). Following the submission of this Motion in Limine, the parties filed their Joint Proposed Jury Instructions. It includes a proposed jury instruction on this topic: "Evidence of a defendant's membership in La Mara Salvatrucha, otherwise known as MS-13, by itself, is insufficient to establish that person's guilt of a crime as an aider and abettor or coconspirator." (*See* Joint Jury Instrs. at 31, ECF No. 307); (citing Jury Instr. No. 45 in *United States v. Palafox, et al.*, 2:16-cr-265-GMN-NJK, ECF No. 2122). Accordingly, the Court DENIES as MOOT Figueroa-Torres' Motion for Preliminary Jury Instruction Regarding Gang Membership.

**D. Figueroa-Torres' Motion in Limine to Preclude or Limit Testimony from the Government's Gang Expert, (ECF No. 268)**

Defendant Figueroa-Torres moves this Court for an order either precluding or limiting testimony from the Government's gang expert, Federal Bureau of Investigation Task Force Officer Raymond Betts. (*See generally* Mot. Limine Gang Expert, ECF No. 267). Reyes-Castillo and Perez-Manchame filed Motions for Joinder, (ECF Nos. 272, 278). Figueroa-Torres specifically asks this Court to preclude Officer Betts from testifying as an MS-13 expert witness. (*Id.* 23:18–19). In the alternative, he requests that the Court hold an evidentiary hearing pursuant to *Daubert* to determine the admissibility of the proffered evidence, and argues that the opinions Officer Betts intends to testify about should be disclosed to Defendants now. (*Id.* 23:22–24).

The Government's expert witness summary states that Officer Betts will testify as an expert on MS-13 and that his testimony will be helpful to the jury in understanding that:

> MS-13 is involved in a variety of criminal activities including witness intimidation, aggravated assault, drug trafficking, and murder. MS-13 operates throughout the United States, and internationally, primarily located in El Salvador, Guatemala, Honduras, and Mexico. MS-13 recruits members predominately from the Hispanic community and often among juveniles. Recruits are typically 'jumped in' to the gang by being physically beaten by members while another member counts to thirteen. MS-13 requires its members

to support its leadership and their decisions about gang activities, including how and where dues collected from the membership should be spent.  MS-13 preserves, expands, and protects the power, territory, and prestige of MS-13 through the use of intimidation, violence, and threats of violence.

MS-13 is comprised of local organizations or 'cliques' that hold regular individual meetings and send leaders to larger regional or general meetings to maintain control of, and resolve problems within, the gang.  MS-13 cliques in the United States get direction and orders from MS-13 leadership in El Salvador or other parts of the country.  There are different ranks within the gang, sometimes referred to as, in order of rank from lowest to highest, 'paro,' 'observacion,' cheqeuo,' and 'homeboy.'  MS-13 members are often known to each other by gang related nicknames; oftentimes, members only know each other by gang nickname.

MS-13 gang members sometimes tattoo their bodies to identify their membership in, and allegiance to, MS-13, although some members deliberately omit such tattoos in an effort to avoid detection by law enforcement.  Gang members will also identify themselves with specific handshakes or hand signs and will adopt gang colors.  MS-13 recruits are indoctrinated into MS-13 rules, which are often ruthlessly enforced.  Violations of rules are punishable by beatings or by more severe punishment.

One prominent rule encourages MS-13 gang members to confront, fight, and kill rival gang members, known as 'chavalas.'  Gang members gain status by committing gang-sanctioned violent acts.  MS-13 members confront and retaliated against rival gangs through the use of intimidation, violence, threats of violence, assaults, and murders.

MS-13 members also hinder and obstruct the efforts of law enforcement to identify, apprehend, and successfully prosecute and punish gang members.  MS-13 has a rule that commands silence about gang activity and prohibits cooperation with law enforcement.  MS-13 members also intimidate members of the community through intimidation.

(*See* Expert Not. Betts, ECF No. 198).

FRE 702 allows a qualified expert to testify "in the form of an opinion or otherwise" where:

    a.  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
    b.  the testimony is based on sufficient facts or data;
    c.  the testimony is the product of reliable principles and methods; and
    d.  the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

## 1.  Relevancy and Reliability

Figueroa-Torres contends that the proffered gang expert testimony will not assist the jury in understanding the evidence presented or to determine a fact at issue. (Mot. Limine Gang Expert 11:14–15).  He also argues that the proffered testimony is not reliable. (*Id*. 13:24).

Expert testimony is admissible under FRE 702 if it is both relevant and reliable. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).  "[R]elevance means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).  Expert testimony is admissible under Rule 702(a) "if the subject matter at issue is beyond the common knowledge of the average layman." *United States v. Winter*, 729 F.2d 602, 605 (9th Cir. 1984); Advisory Committee Notes to Rule 702 ("There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.").  Therefore, the proponent of expert opinion is not entitled to bolster evidence with the aura of scientific or specialized expertise if the jury is capable of understanding the significance of the evidence without an expert.

Under the reliability requirement, the expert testimony must "ha[ve] a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). To ensure reliability, the court must "assess the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance." *Id.* These factors are "helpful, not definitive," and a court has discretion to decide how to test reliability "based on the particular circumstances of the particular case." *Id.* (internal quotation marks and footnotes omitted). In addressing gang expert testimony offered for impeachment purposes, the Ninth Circuit has stated that "[t]he *Daubert* factors . . . simply are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000).

The Court previously listed what Officer Betts' testimony is likely to entail based on his disclosure. Figueroa-Torres largely relies on a decision from another court in this Circuit, *United States v. Cerna*, No. CR 08-0730 WHA, 2010 WL 2347406, *5 (N.D. Cal. June 8, 2010), which the Court finds persuasive here. (*See generally* Mot. Limine Gang Expert). As *Cerna* notes, "[t]he reason we have jury trials, place the burden of proof on the government, and require unanimity is to insist that the government prove the facts of a crime." *Cerna,* No. CR 08-0730 WHA, 2010 WL 2347406, *5 (N.D. Cal. June 8, 2010). Indeed, one of the key elements of a RICO conspiracy is the structure, organization, and management of the affairs of a racketeering enterprise, all as they relate to conducting the affairs of an enterprise through a pattern of racketeering activity. "Juries would ordinarily rely on fact witnesses, such as cooperating witnesses and undercover officers, to supply the facts. They do not need [law enforcement] opinions to do this." *Id.* at *5. Under Rule 702, expert testimony is reserved for opinions that will assist the trier of fact. *Cooper*, 510 F.3d at 942.

As was the case in *Cerna*, the main thrust of Officer Betts' proffer will not assist the trier of fact. The way MS-13 operates, including its recruitment process and its structure, should be proven with facts, not expert opinions. The racketeering organization alleged to exist in this case is the MS-13 gang itself. The gang's existence, organization, and history should, therefore, be proven through testimony and evidence such as cooperating witnesses, admissions by defendants, co-conspirator statements, physical evidence, documents, videos and photographs, and recordings.

The Government is correct that in *United States v. Hankey* and *United States v. Padilla*, the Ninth Circuit allowed the introduction of law enforcement expert opinion regarding the existence, structure, and history of gangs. 203 F.3d 1160, 1164 (9th Cir. 2000); 387 F.3d 1087, 1094 (9th Cir. 2004). But in *Hankey* and *Padilla*, such expert testimony was allowed only as rebuttal testimony and for the limited purpose of impeaching a defense witness.[3] The Court also notes that *Hankey* and *Padilla* did not involve charges of racketeering conspiracy as does the present matter. Should the need arise, this Court would allow for rebuttal expert testimony and for the limited purpose of impeaching a witness or some other admissible purpose.

For the foregoing reasons, the Court holds that Officer Betts' expert opinions as to the structure, organization, and operations of MS-13 will not be allowed as evidence in the Government's case-in-chief to prove the substantive elements of the RICO or VICAR offenses charged herein. This line of expert opinions is not admissible because "the subject matter at issue is [not] beyond the common knowledge of the average layman." *Winter*, 729 F.2d at 605. On the other hand, subject to foundation, Officer Betts' expert opinions as to other matters may

---

[3] In *United States v. Hankey*, 203 F.3d 1160, 1164 (9th Cir. 2000), the court permitted expert testimony regarding a gang's "code of silence" to provide the jury with an explanation for why a defendant would lie on a co-defendant's behalf. In *United States v. Padilla*, 387 F.3d 1087, 1094 (9th Cir. 2004), the court similarly permitted expert testimony regarding punishment for junior members of the gang who failed to support senior members. The testimony was allowed only for the limited purpose of impeaching the exculpatory testimony of a witness who was a junior member of the gang.

1    be admissible so long as the opinions are specified in a proper Rule 16 disclosure along with

2    the basis and reasons therefor.

### 2. Unfair Prejudice

4    Figueroa-Torres argues that FRE 403 permits the Court to exclude gang expert

5    testimony if the probative value of such testimony is substantially outweighed by the danger of

6    undue prejudice. (Mot. Limine Gang Expert 22:19–22).  Indeed, courts should exclude

7    evidence if its relevance/probative value is substantially outweighed by the risk of unfair

8    prejudice, which is the risk that the jury will base its verdict on some inappropriate factor or

9    opinion extraneous to the evidence admitted at trial. *See* FRE 403.  Figueroa-Torres' FRE 403

10   concern is that the proffered gang expert testimony presents a high risk of causing undue

11   prejudice to him because Officer Betts' testimony is likely to brand Figueroa-Torres as an

12   associate, member, or a "want-to-be member" of MS-13, causing the jury to convict on that

13   basis alone, rather than on any actual convincing evidence of his guilty participation.  However,

14   as discussed above, the parties proposed a jury instruction that would cure this concern.[4]  Thus,

15   Figueroa-Torres' concern of unfair prejudice on this basis is moot.

### 3. Proving Elements of the Crime

17   Figueroa-Torres contends that many courts express concerns about gang expert

18   testimony and therefore strictly limit its admissibility in RICO prosecutions where the expert

19   potentially proves elements of the offense. (Mot. Limine Gang Expert 5:16–18).  Because

20   Defendants seek to prelude Officer Betts' testimony on the basis that his testimony will

21   potentially prove elements of the crimes charged, a FRE 704 analysis is triggered.  In general,

22   "an opinion is not objectionable just because it embraces an ultimate issue." FRE 704(a).

23   However, "[i]n a criminal case, an expert witness must not state an opinion about whether the

24   _____

25   [4] "Evidence of a defendant's membership in La Mara Salvatrucha, otherwise known as MS-13, by itself, is insufficient to establish that person's guilt of a crime as an aider and abettor or coconspirator." (*See* Joint Jury Instrs. at 31).

defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense.  Those matters are for the trier of fact alone." FRE 704(b).

Here, the Government must establish the existence of a racketeering conspiracy; it is an element of the offense.  An association of people becomes a racketeering enterprise based on its mental state—that is, the agreement of its members to commit criminal acts on behalf of the organization. (*See* Joint Jury Instrs. at 28).  Having Officer Betts opine that MS-13 is a criminal enterprise therefore crosses the line, because it presupposes the mental state of its participants.  As discussed in more detail above, Officer Betts is also precluded from testifying to the substantive elements of the RICO or VICAR offenses charged herein more generally.

### 4. Confrontation Clause

Figueroa-Torres further avers that the proffered opinions of Officer Betts are largely based on inadmissible evidence in violation of the Confrontation Clause. (Mot. Limine Gang Expert 17:9–10).  The Government argues that there is no Confrontation Clause violation because the Ninth Circuit permits law enforcement experts to testify about gang structure and operations based on their experience. (Resp. 8:13–14, ECF No. 300).  The Supreme Court held in *Crawford v. Washington* that a defendant's Confrontation Clause rights are violated by the admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had. . . a prior opportunity for cross-examination." 541 U.S. 36, 53–54 (2004).  Nevertheless, an expert witness may offer opinions based on such inadmissible testimonial hearsay, as well as any other form of inadmissible evidence, if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." FRE 703.  Moreover, the expert may disclose to the jury the inadmissible evidence relied on in forming his opinion "if [its] probative value in helping the jury evaluate the opinion substantially outweighs [its] prejudicial effect." *Id.*

Under these rules, there is generally no *Crawford* problem when an expert "appli[es] his training and experience to the sources before him and reach[es] an independent judgment." United States v. *Gomez*, 725 F.3d 1121, 1129 (9th Cir. 2013) (quoting *United States v. Johnson*, 587 F.3d 625, 635 (4th Cir. 2009)).  But an expert exceeds the bounds of permissible expert testimony and violates a defendant's Confrontation Clause rights when he "is used as little more than a conduit or transmitter for testimonial hearsay, rather than as a true expert whose considered opinion sheds light on some specialized factual situation." *Id.* (quoting *Johnson*, 587 F.3d at 635).  Accordingly, the key question for determining whether an expert has complied with *Crawford* is the same as for evaluating expert opinion generally: whether the expert has developed his opinion by "applying his extensive experience and a reliable methodology." *United States v. Dukagjini*, 326 F.3d 45, 54 (2d Cir. 2003).

Because Officer Betts is precluded from testifying about MS-13's structure, operations, and history, he will not act as "a conduit or transmitter for testimonial hearsay, rather than as a true expert whose considered opinion sheds light on some specialized factual situation." *Gomez*, 725 F.3d at 1129.  Thus, his testimony is unlikely to violate the Confrontation Clause, but Defendants may re-raise this objection during trial.

### 5.  Dual Purpose Testimony

Lastly, Figueroa-Torres objects to Officer Betts providing both expert and lay witness testimony.  Indeed, the Government's disclosures regarding Officer Betts' expert testimony does not state, one way or another, whether he will also provide lay witness testimony. (*See generally* Expert Not. Betts).  It does, however, note that Officer Betts has interacted with and observed MS-13 members and associates. (*Id.*).  Figueroa-Torres ultimately argues that if Officer Betts is offered as both an expert and lay witness, that presents another issue with the Government's proposed gang expert testimony. (Mot. Limine Gang Expert 21:7–8).  The

Government, however, indicates in its Response that Officer Betts is not a fact witness.[5] (Resp. 9:18).  Thus, this particular concern of Figueroa-Torres is moot.

In conclusion, the Court GRANTS, in part, and DENIES, in part, Figueroa-Torres' Motion in Limine to Preclude or Limit Testimony from the Government's Gang Expert.  To reiterate, Officer Betts' expert opinions as to the structure, organization, and operations of MS-13 are precluded to prove the substantive elements of the RICO or VICAR offenses charged herein.  On the other hand, subject to foundation, Officer Betts' expert opinions as to other matters may be admissible so long as the opinions are specified in a proper Rule 16 disclosure along with the basis and reasons therefor.  Further, should the need arise, this Court will consider allowing Officer Betts to offer rebuttal expert testimony for the limited purpose of impeaching a witness.

## IV.    CONCLUSION

IT IS HEREBY ORDERED that Defendant Figueroa-Torres' Motion in Limine re: Immigration, (ECF No. 264), is **DENIED, in part**, and **GRANTED, in part**.  The Government may admit evidence of Figueroa-Torres November 2017 deportation and lack of permission to re-enter the United States.  The Government is precluded from using the terms "illegal entry" or "illegal alien."

IT IS FURTHER ORDERED that Defendant Figueroa-Torres' Motion in Limine to Preclude Reference to Drug Use, Possession of Drugs, (ECF No. 266), is **DENIED**.

IT IS FURTHER ORDERED that Defendant Figueroa-Torres' Motion for Preliminary Jury Instruction Regarding Gang Membership, (ECF No. 267), is **DENIED as MOOT**.  The related Motions for Joinder, (ECF Nos. 273, 277) are **DENIED as MOOT**.

---

[5] The Government explains that while Officer Betts is not a fact witness in this case, he has met a cooperating witness once because of the witness' knowledge about another, unrelated case. (Resp. at n.2).  He has not reviewed any case notes, reports, or photographs in this case and has no knowledge about Defendants or the facts of the case. (*Id*.).

**IT IS FURTHER ORDERED** that Defendant Figueroa-Torres' Motion in Limine to Preclude or Limit Testimony from the Government's Gang Expert, (ECF No. 268), is **GRANTED, in part**, and **DENIED, in part**.  The related Motions for Joinder, (ECF Nos. 272, 278), are **GRANTED, in part**, and **DENIED, in part**.  Officer Betts' expert opinions as to the structure, organization, and operations of MS-13 are precluded.  The Government will not be allowed to use such evidence to prove the substantive elements of the RICO or VICAR offenses.  The gang's existence, organization, and history should be proven through testimony and evidence such as cooperating witnesses, admissions by defendants, co-conspirator statements, physical evidence, documents, videos and photographs, and recordings.  Subject to foundation, Officer Betts' expert opinions as to other matters may be admissible so long as the opinions are specified in a proper Rule 16 disclosure along with the basis and reasons therefor.

**DATED** this ___23___ day of April, 2025.

_____
Gloria M. Navarro, District Judge
United States District Court